IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHEILA L. V.,

        Plaintiff,

v.                                Civil Action 2:21-cv-5882
                                  Judge Algenon L. Marbley
                                  Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Sheila L.V. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed her application for SSI on April 12, 2019, claiming disability beginning on February 15, 2005, due to scoliosis, ADHD, Bi-Polar Disorder, Bell's palsy, heart problems, asthma, sinuses, allergies, back pain, and acid reflux. (Tr. 185–92, 209). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on July 24, 2020. (Tr. 31–66). The ALJ denied benefits in a written decision on November 4, 2020. (Tr. 12–30). That became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 22, 2021 (Doc. 1), and the Commissioner filed the administrative record on February 16, 2022 (Doc. 8). The matter has been briefed and is ripe for consideration. (Docs. 13, 15).

### A. Relevant Statements to the Agency

The ALJ summarized Plaintiff's statements to the agency as follows:

> *** She alleges that scoliosis, being bipolar, and back pain limit her ability to work (Exhibit 1E/2). She reported that she cannot stand for long due to scoliosis (Exhibit B4E/2). She reported that she has to sit often and rest when shopping (Exhibit B4F/4).

(Tr. 22).

> In a function report, she reported that she feeds and gives water to her cats (Exhibit B4E/3). She reported that she prepares food or meals for th[r]ee hours (Exhibit B4E/5).

(Tr. 23).

### B. Relevant Medical Evidence

The ALJ discussed Plaintiff's medical evidence as follows:

> [Plaintiff]'s filing of the current claim appears to follow an episode of Bell's Palsy that she suffered in late March 2019 (Exhibit B3F). She had rehabilitation thereafter (Exhibit B10F). She used a walker for several months (Exhibits B5F and B6F). However, on examination, there were no reports of gait, balance, or station deficits (Exhibit B5F). This was in May 2015—within months of her alleged onset date. Also, as noted above, the effects of her Bell's Palsy resolved within twelve months (Exhibit B7F/15).
>
> ***
>
> Scoliosis is annotated in the medical records, but the case record includes no clinical findings to determine the exact severity of this impairment (Exhibit B2F/22). At one point, there is an indication of radiculopathy. Also, on that same note, regarding degenerative disc disease, there is no x-ray or Magnetic Resonance Imaging (MRI) of [Plaintiff]'s cervical or lumbar spine. Additionally, on examination with Yadwinder Singh, M.D., in April 2019 and May 2019, [Plaintiff] presented well developed, well nourished, and in no acute distress (Exhibits B4F/9 and 16). Thereafter, in September 2019, neurological examination showed no focal deficits (Exhibit B7F/10). She had normal sensation reflexes, coordination, and muscle strength and tone.
>
> ***
>
> Additionally, the aforementioned essentially normal physical examinations do not indicate that [Plaintiff]'s obesity causes chronic limitations. With height of 5'5"

and weight ranging from 213 pounds (June 2019) (Exhibit B6E/4) to 228 pounds (September 2019) (Exhibit B7F/17) during the during the period at issue here, [Plaintiff] has Body Mass Index (BMI) of 35 to 38.

(Tr. 22).

**C. Medical Opinions**

The ALJ discussed the medical source opinions and prior administrative medical finding as follows:

> The State agency medical consultants opined initially and on reconsideration that [Plaintiff] has the residual functional capacity for light work with no climbing ladders, ropes, or scaffolds, occasional climbing ramps/stairs, frequent balancing, occasional stooping, kneeling, crouching, crawling, no concentrated exposure to extreme heat, extreme cold, wetness, humidity, noise, vibration, fumes, odors, dust, or poor ventilation, and no exposure to unprotected heights or hazardous machinery (Exhibits B2A and B4A). The State agency medical consultants opined that [Plaintiff] must avoid all exposure to hazards. I find that this opinion is persuasive because it is well supported by the objective findings. The objective findings are consistent with light level work. For example, in September 2019, neurological examination showed no focal deficits (Exhibit B7F/10). She had normal sensation reflexes, coordination, and muscle strength and tone.
>
> The State agency psychological consultant opined initially that [Plaintiff] can interact with others in the workplace on an occasional and superficial basis and can respond appropriately to changes in the work setting that occur occasionally and are explained ahead of time (Exhibit B2A). The State agency psychological consultant opined on reconsideration that [Plaintiff] could work within a set routine where major changes are explained in advance and gradually implemented to allow [Plaintiff] time to adjust to the new expectations and that she had reduced ability to handle routine stress and pressure in the workplace but adequate to handle tasks without strict time limitations or production standards (Exhibit B4A). I find that these opinions are persuasive because it is well supported by the objective findings. At a consultative examination, her recent memory and remote memory were essentially intact (Exhibit B6F/4). She remembered six digits forward and five backwards. Yet, she had difficulties with addition. She remembered two out of three items after five minutes with interference and cueing. Also, the above mental residual functional capacity limitations are consistent with each other.
>
> Dr. Singh opined that [Plaintiff] could not lift or do heavy work (Exhibits B4F/5 and B5F/5). I find that this opinion is unpersuasive because [Plaintiff] was still using a walker months after onset of Bell's Palsy when Dr. Singh rendered this opinion, but by September 2019, Bell's Palsy had resolved according to Dr. Singh.

> So, this opinion is not now well supported and not consistent with the State agency medical consultants' opinions.
>
> Dr. Tanley opined that [Plaintiff] would have little or no difficulty with tasks of increased complexity and multistep tasks but would have problems with the "free and easy commerce of social interaction" (Exhibit B6F/6). Dr. Tanley also opined that the pressures of work would be at risk due to low frustration tolerance. I find that this opinion is somewhat persuasive because they seem to be supported by his findings and ultimately consistent with the State agency assessments. Dr. Tanley reasoned that [Plaintiff]'s depressive symptoms would result in these limitations. This is reasonable based on her diagnosis of a mental impairment.

(Tr. 23–24).

**D. The ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since April 12, 2019, the application date. (Tr. 18). And the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, scoliosis, obesity, and bipolar disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps/stairs, stoop, crouch, kneel, and crawl. She can perform tasks where there are only occasional changes and such changes can be explained in advance and gradually implemented. She can perform tasks free of time deadlines but are subject to assessment of pace on an hourly basis and free of production rate requirements in the shift. She can interact with others on an occasional and superficial basis.

(Tr. 21).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22).

The ALJ determined that Plaintiff has no past relevant work. (Tr. 24). Relying on the

vocational expert's testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a cleaner (housekeeper) or a marker. (Tr. 25). He thus concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since April 12, 2019, the date the application was filed (20 CFR 416.920(g))." (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ erred when crafting the RFC because he disregarded Plaintiff's use of an assistive device (a walker) during the relevant period, and failed to discuss the impact that a walker would have on her ability to work. (Doc. 13 at 4–7). Plaintiff further argues that the ALJ erred at step 2 by improperly evaluating her Bell's palsy and left-sided weakness as not a medically determinable impairment. (*Id.* at 7–10). The Commissioner

5

counters that the ALJ reasonably considered the evidence of record in determining Plaintiff's RFC (Doc. 15 at 6–10), and there was no error at step 2 (*id*. at 4–6).

    **A. RFC Determination**

As noted, Plaintiff challenges the ALJ's RFC determination. Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.913(a), 416.920c (2017). A [Plaintiff]'s RFC is an assessment of "the most [a [Plaintiff]] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A [Plaintiff]'s RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 416.913(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 416.913(a)(2), (5).

6

an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . . . " § 416.920c(b)(3). Significantly, the RFC assessment is an administrative finding reserved to the Commissioner, not a medical opinion. And as the finder of fact, an ALJ has the exclusive responsibility for formulating the residual functional capacity assessment. 20 C.F.R. § 416.946(c).

Here, the ALJ determined that Plaintiff's degenerative disc disease, scoliosis, obesity, and bipolar disorder were severe impairments. (Tr. 17). Still, the ALJ found that Plaintiff could perform a range of work at the light exertional level that involved never climbing ladders, ropes, or scaffolds, and occasionally climbing ramps or stairs, stooping, kneeling, crouching, and crawling. (Tr. 21).

Upon review, it appears that Plaintiff challenges a narrow piece of the RFC. She argues that she cannot do the standing/walking required by light work given her impairments and use of an assistive device, a walker. (Doc. 13. at 4–7). Up front, the Undersigned agrees with the Commissioner that Plaintiff's understanding of light work is perhaps off. Light work involves lifting no more than twenty pounds occasionally and ten pounds frequently. 20 C.F.R. § 416.967(b). The regulations further provide that a job may be characterized as "light" on the basis that it involves a "good deal of walking or standing," or "*sitting most of the time* with some pushing and

7

pulling of arm or leg controls." *Id.* (emphasis added); *see also* SSR 83-10p, 1983 WL 31251, *5 (S.S.A. 1983) ("A job is also in [the light] category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls which require greater exertion than in sedentary work"). So the Commissioner says that even if Plaintiff could not stand/walk for six hours, it is possible that she could still perform light work because she could perform the lifting and carrying requirements as the vocational expert testified. The Court, however, need not resolve the issue.

Even if Plaintiff is correct about what light work requires, the ALJ still did not err because substantial evidence supports the ALJ's determination that Plaintiff could perform light work that requires standing/walking for six hours. The ALJ discussed that Plaintiff claimed her scoliosis and back pain limited her ability to stand. (Tr. 22, 209, 230). But the ALJ properly highlighted that no objective findings in the medical record support Plaintiff's claims. (Tr. 22). Notably, there are no clinical findings related to Plaintiff's scoliosis to determine the exact severity of her impairment (Tr. 22). And there is no x-ray or Magnetic Resonance Imaging (MRI) of her cervical or lumbar spine to document her degenerative disc disease. (Tr. 22). Still more, in April and May of 2019, Plaintiff presented well developed, well nourished, and in no acute distress. (Tr. 504, 511). Then, in September 2019, her neurological examination showed no focal deficits and she had normal sensation, reflexes, coordination, and muscle strength and tone. (Tr. 22, 608). Thus, based on her normal physical examinations and the absence of clinical findings relating to her scoliosis and degenerative disc disease, the ALJ found that Plaintiff could perform a range of light work. (Tr. 22).

In addition, Plaintiff's argument that she used an assistive device, specifically a walker, during the relevant period is unavailing. (Doc. 13 at 6). The ALJ noted that Plaintiff used a walker

8

for several months after her Bell's palsy onset (Tr. 22, 555–88), but there were no reports of gait, balance, or station deficits (Tr. 555–81). And significantly, as discussed below, Plaintiff's Bell's palsy resolved within twelve months, so nothing in the record shows that continued use of the walker was necessary. (Tr. 22, 603; *see also* Tr. 697 (identifying headaches as only neurological complaint)).

Beyond the medical records, the ALJ relied on the state agency physicians. Based upon their review of the record, they determined that Plaintiff could perform a range of light work that involved six hours of standing and/or walking in an eight-hour day despite her impairments. The ALJ found the assessments persuasive as they were consistent with the record evidence, which revealed no neurological deficits and normal sensation, reflexes, coordination, and muscle strength and tone. (Tr. 24). Here, the ALJ's reliance upon the state agency reviewers' assessments was not unreasonable. *See* 20 C.F.R. §§ 416.913 a(b)(1) ("[O]ur Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). In addition to being disability experts, the state agency reviewing physicians are also known as neutral sources. *See Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005) ("[T]he reviewing physicians . . . have the strongest claims to neutrality.").

The ALJ also took into account Plaintiff's reported daily activities. Plaintiff reported that she took care of her cats. (Tr. 23, 231). She reported preparing meals for up to three hours, depending on the meal, and folding clothes. (Tr. 233). During her consultative examination, Plaintiff also reported that she shopped for groceries with her husband (Tr. 584), went to appointments, and attended church regularly (Tr. 235). The ALJ relied upon Plaintiff's range of activities as additional support for his RFC finding. Again, this was not error. *See Bogle v. Sullivan*,

9

998 F.2d 342, 348 (6th Cir. 1993) (noting that a claimant's ability to perform household and social activities on a daily basis may be contrary to a finding of disability).

In sum, the ALJ considered the entire record, including the medical treatment and findings, the state agency assessments, and Plaintiff's reported activities, to formulate the RFC finding. Substantial evidence supports the ALJ's decision, and this Court will not disturb it. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

### B. Step 2

Plaintiff also argues that the ALJ erred when he determined that her Bell's palsy was not a medically determinable impairment. (Doc. 13 at 7–10).

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. Additionally, to be classified as "medically determinable" an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

Here, the ALJ thoroughly considered Bell's palsy. Particularly, he explained that Plaintiff's current claim appeared to follow an episode of Bell's palsy that occurred in late March 2019. (Tr. 22) (citing Tr. 332–495). He noted that Plaintiff had rehabilitation after her episode (Tr. 22, 625–93), and used a walker for several months (Tr. 562–64, 571, 573, 585). The ALJ then underscored that Plaintiff's Bell's palsy resolved in less than twelve months (Tr. 22, 603). And, under the Act, a claimant bears the burden of showing that she has a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months or result in death. 42 U.S.C. §§ 1382c(a)(3)(A)-(B); *see also* 20 C.F.R. § 416.905(a) (twelve month duration requirement). On this record, the ALJ did not err by concluding that Plaintiff's Bell's palsy did not meet the durational requirement of twelve consecutive months. Indeed, six months after her Bell's palsy episode, a September 2019 medical note indicated that "BELLS PALSY ON LEFT SIDE HAS RESOLVED," and an MRI of Plaintiff's brain showed no damage. (Tr. 603).

On top of that, the finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a [plaintiff]'s impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

11

In such a situation, the ultimate inquiry is whether substantial evidence supports the RFC fashioned by the ALJ. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.945(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July 2, 1996). The Sixth Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

Here, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, scoliosis, obesity, and bipolar disorder. (Tr. 18). After finding Plaintiff had severe impairments, the ALJ considered the record and evaluated the effects of Plaintiff's impairments—including Plaintiff's Bell's palsy—on her ability to work. The ALJ expressly discussed the evidence related to Plaintiff's Bell's palsy when formulating the RFC finding. (Tr. 22). So, even if the ALJ misclassified Plaintiff's Bell's palsy—which he did not—there was no error.

At base, Plaintiff appears to suggest that because she was diagnosed with Bell's palsy and received some treatment, more limitations were required in the RFC. Yet, beyond diagnosis, the evidence does not contain objective findings demonstrating a reasonable probability the ALJ would have found Plaintiff disabled had he labeled this impairment "severe." *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969), *quoted in Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). In her brief, Plaintiff does not explain

how the diagnosis of Bell's palsy, standing alone, leads to a disability conclusion. And, as explained above and in the ALJ decision, Plaintiff's symptoms resolved in under a year. The ALJ did not commit reversible error at step two.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:  October 5, 2022              /s/ Kimberly A. Jolson
                                    KIMBERLY A. JOLSON
                                    UNITED STATES MAGISTRATE JUDGE